### DAVENPORT v. FULKERSON, *Appellant.*

1. **Award.** Defendant's cattle were fed by plaintiffs, under an agreement that the fodder should be paid for at the end of the season at the customary price paid in the neighborhood, and defendant being unable to agree with plaintiffs what was the customary price, joined with them in submitting the question to arbitrators, who fixed the price. *Held*, that their determination was binding.

2. **Verdict.** The verdict in this case, *Held*, not liable to the objection of vagueness or uncertainty.

*Appeal from Johnson Circuit Court.*—HON. F. P. WRIGHT, Judge.

AFFIRMED.

*Land & Sparks* for appellant.

*John J. Cockrell* for respondent

NORTON, J.—This is a suit instituted to recover for 1,465 shocks of fodder furnished defendant under the following written contract, viz: " This agreement, made and entered into between John A. Ramsey and Horace Davenport, party of the first part, and J. P. Fulkerson, party of the second part: The said John A. Ramsey and Horace Davenport agree to furnish the said J. P. Fulkerson 1,600 shocks of fodder, and they, (the said John A. Ramsey and Horace Davenport,) agree to take the customary price paid for fodder in the neighborhood during the winter season. The said J. P. Fulkerson agrees to advance money enough to pay for cutting up the above number of shocks. Money due when feeding over."

It is alleged in the petition that defendant received under the contract 1,465 shocks of fodder during the feeding season of 1874–5; that plaintiffs were released by defendant from furnishing the remaining 135 shocks; that the customary price paid for fodder in the neighborhood was 27½ cents per shock for 902 shocks grown on upland, and

30 cents per shock for 563 shocks grown on bottom land; that plaintiffs and defendant not agreeing upon the customary price of said fodder, agreed that N. H. Fulkerson and George W. Houts should fix such price, and they decided that the customary price during the winter it was furnished was 27½ cents per shock for that grown on upland, and 30 cents per shock for that grown on bottom land; that under that decision on the contract defendant owed plaintiffs a balance of $268.23. The answer of defendant, (which is too prolix to be here inserted,) after admitting the contract, alleges that under it plaintiffs were to furnish a feed lot, which they failed to do, to defendant's damage of $25; that the shocks were to consist of 256 hills; that none of them were of that size; that plaintiffs, after shucking the corn from said fodder left the shocks lying on the ground, by reason whereof 1,000 shocks were lost to defendant, to his damage in the sum of $250. The answer admits that plaintiffs and defendant failed to agree upon the customary price of the fodder, and that defendant agreed to submit the question to the judgment of N. H. Fulkerson and G. W. Houts, but avers that such submission was on the condition that they should not fix the price of the same exceeding 20 cents per shock. The replication denied the new matter set up in the answer, and on the trial of the cause plaintiffs obtained judgment for the amount sued for, and defendant brings the case here by appeal.

During the progress of the trial the only exception taken by defendant to the action of the court was to the following instruction, given on behalf of plaintiffs: "If the jury believe from the evidence that, in the month of September, in the year 1874, plaintiffs and defendant entered into and made a certain contract in writing, wherein and whereby plaintiffs agreed to furnish defendant 1,600 shocks of fodder at whatever price and sum might be customary and reasonable in the neighborhood, for fodder during the season of 1874 and 1875, the same to be furnished

in the fields where grown, with a lot. or place in which to turn the cattle while feeding, and the defendant to pay for the same at the end of the feeding. season, and to advance in part payment therefor money enough to pay for cutting and shocking the fodder; and that in accordance with the terms of said agreement plaintiffs did furnish, and defend-. ant did accept and receive a portion of said 1,600 shocks of fodder upon said premises and in accordance with said contract, together with a lot in which to feed the same during the feeding season aforesaid, and said defendant did accept and receive the same as a sufficient fulfillment of said contract, and release plaintiffs from furnishing the further number necessary to make the full number of 1,600 shocks, then the jury will find for plaintiffs in a sum equal to the number of shocks so furnished, multiplied by the customary price per shock in the said neighborhood, with six per cent. interest from the end of the feeding season of 1874–5, less the amount furnished by defendant for cutting corn, and a reasonable sum for feed of plaintiff Davenport's cows; and if the jury further find that after the sale and delivery of the fodder aforesaid, plaintiffs and defendant mutually agreed to leave to G. W. Houts and N. H. Fulkerson the determination of the aforesaid customary price per shock, and that in accordance therewith the said G. W. Houts and N. H. Fulkerson did determine that said customary price was 30 cents per shock for fodder grown on bottom land, and 27½ cents per shock for fodder grown on upland, then the jury will find that 30 cents per shock for fodder grown on bottom land, and 27½ cents per shock for fodder grown on upland, was the customary price, and will find for plaintiffs in a sum equal to the number of shocks of fodder grown on bottom land at 30 cents per shock, and the number of shocks of fodder grown on upland at 27½ cents per shock, with six per. cent. from the end of the feeding season of 1874 and 1875, less the sum advanced by defendant to plaintiffs for cutting the corn, and a reasonable sum for the care and feed of the cows of plaintiff

Davenport. But as the price for the fodder agreed upon in the article of agreement read in evidence was the customary price paid for fodder in their neighborhood, that will be the criterion by which the jury will be governed in fixing the price; and the price fixed by the arbitrators will only be received in evidence of such price and as the criterion, unless the jury shall find that their estimate was clearly erroneous and grossly inadequate."

We cannot perceive the force of defendant's objection to this instruction, as all the evidence relating to the submission of the question of the customary price of shock fodder to the determination of Fulkerson and Houts, one of whom was the brother, and the other the uncle of defendant, was received without objection, and was, therefore, before the court and jury for their consideration. If the original contract had provided that the customary price of the fodder was to be ascertained and fixed by Fulkerson and Houts, and they had fixed it, there can be no doubt but that the parties would have been bound by it, and we can see no reason why their subsequent agreement to refer this question to the determination of Fulkerson and Houts should not be equally binding. The court in giving the instruction properly considered the suit as being based on the contract, and limited the plaintiffs' right of recovery to the customary price of fodder during the season of 1874 and 1875, and the objection urged that plaintiffs were allowed to recover on an award when the cause of action rested in contract, is not well taken.

It is also insisted that the verdict is too vague and uncertain to sustain the judgment entered upon it. The verdict reads thus: " We, the jury, find for plaintiff as follows:

For bottom lands, 563 shocks at 30 cents per shock, $165.90
For uplands, 902 shocks at 27½ cents per shock,      248.05

                                                      $413.95

| | | | | | |
|---|---|---|---|---|---|
| Amount paid by defendant, | - | - | - | - | 149.72 |
| | | | | | $264.23 |
| Amount for feeding cows, | - | - | - | - | 4.00 |
| | | | | | $260.23 |
| Six per cent. one year and six months, | | | - | - | 24.42 |
| | | | | | $283.65 |

CHARLES P. PHILLIPS, Foreman."

We think the court properly regarded this as a finding for plaintiffs of the sum of $283.65. Instead of being open to the objection of vagueness and uncertainty, the reverse is the case, as the verdict shows definitely the method adopted by the jury in ascertaining the balance due plaintiffs. We think, upon the evidence and the case as shown by the record, that the judgment was for the right party, and will, therefore, affirm the judgment in which all concur.